```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------  X
                                          :
                                          :     17cv5124(DLC)
KENNETH CUNNINGHAM,                       :
                                          :     OPINION AND ORDER
                    Plaintiff,            :
                                          :
          -v-                             :
                                          :
THE CITY OF NEW YORK, NEW YORK CITY       :
POLICE OFFICERS STEVEN BAIO, ALFONSO      :
MENDEZ, SERGEANT PERRY QUINCOSES, and     :
JOHN DOES 1-3, in their individual and    :
official capacities,                      :
                                          :
                    Defendants.           :
                                          :
----------------------------------------  X
```

APPEARANCES:

For the plaintiff:
Cyrus Joubin
43 W. 43rd Street, Suite 119
New York, New York 10036

For the defendants:
Elizabeth Colette Connelly
New York City Law Department
100 Church Street, Room 3-212
New York, New York 10007

DENISE COTE, District Judge:

This civil rights action arises out of the plaintiff's arrest on April 29, 2016 on charges that he unlawfully evicted his brother from the apartment they shared. Plaintiff asserts that the officers arrested him even though they knew his brother was a violent drug addict. The defendants, the City of New York and the police officers responsible for the arrest, have moved

to dismiss this action.  For the following reasons, the motion to dismiss is granted.

## BACKGROUND

The following facts are drawn from the second amended complaint ("Complaint").  Plaintiff and his brother, Larnell Cunningham, shared an apartment in Harlem, New York City.  In early April 2016, Larnell lost his keys to the apartment.  Because Larnell was a drug-addict and had been violent towards plaintiff in the past, plaintiff did not give him access to the apartment.  On April 13, Larnell deliberately broke the windows of the apartment while plaintiff was inside.  On April 25, Larnell again broke a window to the apartment.  The plaintiff reported both incidents to the police.

After Larnell broke a window for the second time, defendant Sgt. Perry Quincoses had an arrest warrant issued for Larnell.  Sgt. Quincoses also instructed plaintiff to inform the apartment building's management company about Larnell's actions.  After plaintiff so informed the management company, the management company changed the locks on the apartment and instructed plaintiff not to give Larnell access to the apartment.

On the morning of April 29, Larnell complained to defendant police officers Steven Baio and Alfonso Mendez that plaintiff was not letting him into the apartment.  The officers and Larnell then went to the apartment to speak with the plaintiff.

2

Plaintiff, after being informed of Larnell's eviction complaint, told the officers about Larnell's history of violence towards him and the apartment. During this conversation, Larnell stated, in sum and substance, "I smashed his windows cuz he wouldn't let me in." Plaintiff also told the officers that Larnell had a warrant pending for his arrest, and that they should contact Sgt. Quincoses for the details. The officers called Sgt. Quincoses, who confirmed that Larnell was wanted for arrest.

Sgt. Quincoses arrived at the apartment shortly thereafter. Plaintiff reiterated Larnell's violent history to Sgt. Quincoses, and various threats Larnell had made against him with respect to the apartment. During this encounter, Larnell appeared deranged and under the influence of illegal drugs. Sgt. Quincoses instructed officers Baio and Mendez to arrest Larnell. Larnell was handcuffed, and illegal drugs were discovered on his person. Throughout his interactions with the police, Larnell repeatedly stated that he had a right to live in the apartment. Sgt. Quincoses then asked plaintiff if he would let Larnell into the apartment. Plaintiff refused, stating that he should not have to permit a person into his apartment if by doing so he would be placed in immediate danger. Plaintiff also stated that it was the management company that had the locks changed and had instructed him not to give the keys to Larnell.

3

Nonetheless, a short time thereafter, Sgt. Quincoses arrested plaintiff.

Plaintiff was arraigned in New York Country Criminal Court on a charge of violating New York City Administrative Code § 26-521(a)(3) -- Unlawful Eviction, which is an unclassified misdemeanor. The criminal complaint was signed by Officer Baio. The complaint alleged that "[o]n or about April 29, 2016 at about 11:45 A.M., inside 2588 7th Avenue, the defendant [Kenneth Cunningham] evicted . . . the occupant of a dwelling unit who has lawfully occupied the dwelling unit by engaging . . . in conduct which prevented . . . the occupant from the lawful occupancy of such dwelling unit." The complaint further alleged that "I [Officer Baio] am informed by Leonel [Larnell] Cunningham . . . that [Larnell] has lived in [the apartment] for . . . a period of time greater than 30 days . . . . I am further informed that when [Larnell] came home, he found that his locks were changed and he could not enter the apartment . . . . I observed the [defendant] open the door to [the apartment.] The defendant then stated in substance that he would not let [Larnell] into the apartment and that [Larnell] could not get a key to the apartment."

Plaintiff was incarcerated for a day and a half before he made bail. Larnell was prosecuted for criminal mischief and possession of controlled substances, and an order of protection

issued in that case required him to stay away from plaintiff and the apartment.  The unlawful eviction prosecution of plaintiff was dismissed approximately one week later, on May 5, 2016, on motion of the District Attorney.

This action was commenced on July 7, 2017.  On December 6, 2017, defendants moved to dismiss plaintiff's first amended complaint.  Plaintiff amended his complaint for the second time on December 13, 2017.  The defendants renewed their motion to dismiss on January 26, 2018.

## **DISCUSSION**

In order to survive a motion to dismiss, "a complaint must plead specific facts sufficient to support a plausible inference that the defendant is liable for the misconduct alleged."  <u>Doe v. Columbia University</u>, 831 F.3d 46, 54 (2d Cir. 2016).  In deciding the motion, a court must accept as true all allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  <u>Loginovskaya v. Batratchenko</u>, 764 F.3d 266, 269-70 (2d Cir. 2014).

The Complaint asserts claims against the individual defendants for false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene, and a <u>Monell</u> claim against the City of New York.  Each of these claims is addressed in turn.

## I. False Arrest

Plaintiff first alleges that the actions of the police officers constituted the tort of false arrest. To state a claim for false arrest, a plaintiff must plausibly plead that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (emphasis in original) (citation omitted); see also Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Simpson, 793 F.3d at 265.

"Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted). "Probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted).

"[I]nformation gleaned from informants can be sufficient to justify the existence of probable cause. It is well-established that a law enforcement official has probable cause to arrest if he received the information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted). "[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Id. at 395-96 (citation omitted). "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Id. at 396 (citation omitted).

Police officers have no obligation to investigate affirmative defenses. Ricciuti v. N.Y. City. Transit. Auth., 124 F.3d 123, 128 (2d Cir. 1997). In some circumstances, however, "a police officer's awareness of facts supporting a defense can eliminate probable cause." Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003). An officer may not "deliberately

7

disregard facts known to him which establish [an affirmative defense.]" Id. at 136.

New York City's unlawful eviction law provides that:

> <u>It shall be unlawful for any person to evict</u> or attempt to evict <u>an occupant of a dwelling unit</u> who has lawfully occupied the dwelling unit for thirty consecutive days or longer or who has entered into a lease with respect to such dwelling unit or has made a request for a lease for such dwelling unit pursuant to the hotel stabilization provisions of the rent stabilization law <u>except to the extent permitted by law pursuant to a warrant of eviction or other order of a court of competent jurisdiction or a governmental vacate order by</u>:
>
> (1) using or threatening the use of force to induce the occupant to vacate the dwelling unit; or
>
> (2) engaging in a course of conduct which interferes with or is intended to interfere with or disturb the comfort, repose, peace or quiet of such occupant in the use or occupancy of the dwelling unit, to induce the occupant to vacate the dwelling unit including, but not limited to, the interruption or discontinuance of essential services; or
>
> (3) <u>engaging</u> or threatening to engage <u>in any other conduct which prevents or is intended to prevent such occupant from the lawful occupancy of such dwelling unit</u> or to induce the occupant to vacate the dwelling unit including, but not limited to, removing the occupant's possessions from the dwelling unit, removing the door at the entrance to the dwelling unit; removing, plugging or otherwise rendering the lock on such entrance door inoperable; or changing the lock on such entrance door without supplying the occupant with a key.

N.Y. Unconsol. Law § 26-521 (McKinney) (emphasis supplied).

8

The law further provides that "[a]ny person who intentionally violates or assists in the violation of [the statute] shall be guilty of a Class A misdemeanor." N.Y. Unconsol. Law. § 26-523 (McKinney). For there to be probable cause to arrest an individual under the unlawful eviction statute, the police officer must reasonably believe that the individual has intentionally taken action, without authorization by a court or governmental vacate order, to prevent a qualifying resident from occupying a dwelling.

New York law also provides a defense of justification to any criminal offense. The justification statute provides that:

> [C]onduct which would otherwise constitute an offense is justifiable and not criminal when . . . such conduct is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor, and which is of such gravity that, according to ordinary standards of intelligence and morality, the desirability and urgency of avoiding such injury clearly outweighs the desirability of avoiding the injury sought to be prevented by the statute defining the offense in issue.

N.Y. Penal Law § 35.05 (emphasis supplied).

On the facts as pled in the Complaint, the officers had probable cause to believe that plaintiff had unlawfully evicted Larnell. Plaintiff does not seriously dispute that the elements of the unlawful eviction statute were met. The facts known to the officers, as alleged, plainly were sufficient to supply probable cause. Larnell complained that he was unlawfully

evicted, and when the officers interviewed plaintiff, plaintiff refused to let Larnell into the apartment and refused to provide him a set of keys. That conduct met the elements of the unlawful eviction statute.

Plaintiff presents two arguments to suggest his false arrest claim survives. First, he asserts the defense of impossibility. He contends that one who is under arrest, and has no present right to be free, has no "lawful occupancy" of a dwelling and therefore cannot be unlawfully evicted. That argument fails to engage with the words of the statute. The right to live in an apartment is not extinguished by an arrest. If plaintiff had obtained a warrant of eviction or other pertinent court order then Larnell would no longer be a "lawful" occupant. The plaintiff does not suggest he had obtained such an order.

Second, plaintiff contends that failing to let Larnell back in the apartment was justified as an emergency measure. Not so. Based on the allegations in the Complaint, it was not so plainly an emergency. The defense of justification is available only in "rare and highly unusual circumstances." People v. Craig, 78 N.Y.2d 616, 622 (1991) (citation omitted). At the time of the incident, Larnell was under arrest. Refusing to agree to grant him access to the apartment in the past or in the future or to give him keys for him to return to the apartment was not clearly

"necessary as an emergency measure" to prevent an "imminent" injury. See id. at 623 (citation omitted). In particular, the officers could reasonably have believed that plaintiff had a "reasonable, legal alternative course of action": obtain an order of protection or obtain an order of eviction from the housing court. Id.

Moreover, because the plaintiff had not obtained an order evicting his brother from the dwelling in which his brother was otherwise entitled to reside, it was not necessarily clear to the officers -- on the facts alleged in the Complaint -- that the plaintiff was without fault in this domestic dispute. The officers were not required to sift through the facts of the brothers' relationship, and not permitted to sit as judge and jury. Accordingly, there was probable cause to believe that plaintiff violated the unlawful eviction statute, and the Complaint fails to plead that probable cause was extinguished by a plainly apparent defense of justification that the officers improperly ignored. The claim for false arrest fails.

## II. Malicious Prosecution

To state a claim for malicious prosecution, a plaintiff must plead "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4)

actual malice." Dufort v. City of New York, 874 F.3d 338, 350 (2d Cir. 2017) (citation omitted). "The 'existence of probable cause is a complete defense to a claim of malicious prosecution in New York.'" Id. at 351 (quoting Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003)). For the reasons just discussed in connection with the false arrest claim, there was probable cause for a charge of unlawful eviction based on the Complaint's own allegations. Accordingly, the claim for malicious prosecution fails.

## III. Denial of the Right to a Fair Trial

Plaintiff further alleges that the actions of the officers served to deny plaintiff of the right to a fair trial. His claim rests on the officers' failure to mention his defenses of impossibility and justification in the arrest complaint.

The right to a fair trial has been described as follows:

> When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

Ricciuti, 124 F.3d at 130. Fair trial claims based on fabrication of evidence are restricted to those cases in which an:

(1) investigating official

(2) fabricates information

> (3) that is likely to influence a jury's verdict,
>
> (4) forwards that information to prosecutors, and
>
> (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.

Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016). Unlike a malicious prosecution claim, "[t]he existence of probable cause to arrest is not a defense to a fair trial right claim." Soomro v. City of New York, No. 13cv0187(DLC), 2017 WL 1957034, at *4, aff'd, No. 17-1733, 2018 WL 3342322 (2d Cir. July 9, 2018) (summary order). Although probable cause is not a defense to a denial of right to a fair trial claim, "significant policy reasons restrict a fair trial claim to instances in which the false information 'was likely to influence a jury's decision.'" Id. at *5 (quoting Garnett, 838 F.3d at 280). This requires that the allegedly fabricated evidence, at the very least, be material to a viable claim or defense in the criminal case.

Plaintiff's fair trial claim fails for several reasons. First and foremost, the Complaint does not assert that the arrest complaint contained a fabrication.

Moreover, even if a fair trial claim includes the failure to disclose material information where that omission renders "an otherwise true statement false," Morse v. Fusto, 804 F.3d 538, 548 (2d Cir. 2015), there is absolutely no support in the law to apply that principle to arrest complaints, and an officer's

13

omission from those complaints of an arrestee's potential affirmative defenses to the criminal charge. An arrest complaint is not a vehicle for reciting all potential defenses to the charge.

Finally, the claim for denial of right to a fair trial must also be dismissed because the allegedly withheld information was not reasonably likely to influence a jury's decision. The facts underlying the two defenses of impossibility and justification were known to the plaintiff and would be available to present as defenses at trial to the extent they were viable defenses. The failure to include these defenses in an arrest complaint had no impact whatsoever on the plaintiff's ability to rely successfully on those defenses at trial.

In opposition to the motion to dismiss, the plaintiff adds an alternative theory of liability to support his fair trial claim. He speculates that the Assistant District Attorney ("ADA") responsible for prosecuting plaintiff's criminal case must have asked for bail to be set because the individual defendants failed to advise the ADA of the plaintiff's affirmative defenses. This theory fails as well. First, it is not pleaded in the Complaint, which was the plaintiff's third effort to plead his causes of action. Second, it relies solely on speculation. Third, as already described, an officer's failure to describe or list in conversations with prosecutors

affirmative defenses which an arrestee may assert does not constitute a fabrication of evidence in violation the right to a fair trial. The failure to volunteer facts, to a prosecutor before a bail hearing is held, that might underlie a potential affirmative defense is not a fabrication that will be material to a jury at trial. The plaintiff does not suggest that the ADA, in reliance on conversations with the defendant officers and during the course of bail arguments, fabricated any evidence or even wrongfully contradicted a factual description of pertinent facts presented by the plaintiff's attorney. Accordingly, the revised theory of liability presented in the plaintiff's opposition to this motion fails as well.

**IV. Failure to Intervene and Municipal Liability**

Plaintiff further alleges that the defendant officers failed to intervene to prevent the false arrest, malicious prosecution, and denial of the right to a fair trial. "[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (citation omitted). As described above, the Complaint fails to plausibly allege a violation of plaintiff's rights by any officer. Accordingly, there is no claim available for failure to intervene against any other officer.

To state a claim against a municipality for the unconstitutional actions of its employees, a plaintiff is required to plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (citation omitted). For the reasons set forth above, there was no denial of a constitutional right. Moreover, the plaintiff has failed to adequately allege any policy or custom that caused his allegedly unlawful arrest. Accordingly, the municipal liability claim must also be dismissed.

## CONCLUSION

The defendants' January 26, 2018 motion to dismiss the second amended complaint is granted. The Clerk of Court is directed to enter judgment for the defendants and to close this case.

SO ORDERED:

Dated: New York, New York
August 30, 2018

_____
DENISE COTE
United States District Judge